IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NAN B.**,[1]<br><br>        Plaintiff,<br><br>        v.<br><br>**ANDREW M. SAUL,** Commissioner of Social Security,<br><br>        Defendant. | Case No. 6:19-cv-1726-SI<br><br>**OPINION AND ORDER** |

Sherwood J. Reese and Drew L. Johnson, DREW L. JOHNSON PC, 1700 Valley River Drive, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Nan B. brings this action pursuant to § 205(g) of the Social Security Act (the

Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses a similar designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's application for Disability Insurance Benefits under Title II of the Act. For the following reasons, the Commissioner's decision is REVERSED and REMANDED for calculation of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff, born in September 1956, is currently 64 years old and was 57 years old at the alleged date of disability onset of January 6, 2014. She protectively filed a Title II application for disability insurance benefits on July 14, 2015. Plaintiff alleged the following impairments: peripheral neuropathy, fibromyalgia, progressive hearing loss, chronic neck and back pain, arthritis, insomnia, anxiety-depression disorder, mobility issues, and alcoholism. AR 202. Her claim was denied initially on September 23, 2016, and upon reconsideration on February 17, 2017. She appealed that decision and attended and testified at a hearing on July 11, 2018, before Administrative Law Judge (ALJ) Mark Tripplet. After that hearing, the ALJ found Plaintiff not to be disabled under the Act. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one of the sequential analysis, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2021. AR 15. The ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since the date of alleged disability onset, but noted that Plaintiff had worked continuously, at near substantial gainful activity levels, for most of the period after her alleged onset date. AR 15-16. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia syndrome (Fibromyalgia), vertebrogenic disorder, and depression/bipolar disorder. AR 16. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16-17.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform

> medium work as defined in 20 CFR 404.1567(c) except the individual can never climb ladders, ropes or scaffolds. The individual can tolerate occasional exposure to loud noise, as defined in Appendix D, Selected Characteristics of Occupations (SCO), 1993 ed. The individual can tolerate no exposure to workplace hazards such as unprotected heights, or exposed, moving, machinery. The individual can perform simple, routine tasks.

AR 17.

At step four, considering the testimony of a vocational expert regarding Plaintiff's past relevant work as actually and generally performed, the ALJ found that Plaintiff was able to perform past relevant work as a barista. AR 25-26. The ALJ also made alternative findings at step five that Plaintiff could perform other jobs existing in the national economy. AR 26-27. Based on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such occupations as kitchen helper, laundry laborer, and dry helper. AR 27. The ALJ thus concluded that Plaintiff was not disabled under the Act through the date of the ALJ's decision. AR 27.

## DISCUSSION

Plaintiff challenges: (1) the ALJ's decision to disregard the determination and opinion of examining physician Darrel Kauffman, M.D. that Plaintiff could only carry out light work; and (2) the ALJ's rejection of Plaintiff's subjective symptom testimony. Each argument is addressed in turn.

### A. Opinion of Dr. Darrel Kauffman

Plaintiff challenges the ALJ's discrediting of a portion of the opinion of examining physician Dr. Kauffman without providing a sufficient legal basis. Specifically, the ALJ declined to adopt Dr. Kauffman's opinion and determination that Plaintiff was limited to lifting 20 pounds occasionally and 10 pounds frequently. Instead, the ALJ included a limitation in the RFC to lifting 50 pounds occasionally and 25 pounds frequently. The Commissioner argues in his

Response that the ALJ's decision to increase Plaintiff's lifting limitations from light to medium was justified by the poor effort and inconsistencies that Dr. Kauffman noted. The Commissioner does not argue that any of the other bases provided by the ALJ for his decision about Plaintiff's lifting limitation, including the prioritization of Dr. Chandra Basham, M.D.'s contradictory opinion, were validly decided. Thus, those arguments are conceded.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin¸* 759 F.3d 995, 1013 (9th Cir. 2014); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

In his decision, the ALJ rejected the opinion of Dr. Kauffman, an examining physician, with respect to Plaintiff's lifting abilities. Dr. Kauffman conducted a physical examination of Plaintiff and concluded that she is able to lift no more than 10 pounds regularly and 25 pounds occasionally. AR 793. The ALJ, however, accepted Dr. Kauffman's findings about Plaintiff's other limitations. The ALJ described the results of Dr. Kauffman's exam as follows:

> Darrel Kauffman, M.D., examined the claimant on January 19, 2017. A cervical x-ray obtained as part of the examination showed degenerative changes throughout the cervical spine, with a prominent degenerative change at the lateral aspect of the mid to lower cervical areas. Vertebral body height and alignment was otherwise satisfactory. A concurrent study of the lumbar spine showed mild degenerative change. The claimant told Dr. Kauffman that she had had neuropathy since 2005, for which she took Lyrica; fibromyalgia diagnosed in 2004, for which she took Flexeril; bilateral hearing loss, not affecting ordinary conversations; and cervical and lumbar pain over the last 20 years, for which she had had no imaging. . . . She was easily able to transfer from the chair to the examination table. She sat comfortably, and was able to take her shoes off without difficulty. She was able to walk to the examination room without difficulty. . . . Range of motion was 90 degrees of forward flexion, and cervical flexion was to 50 degrees. Straight leg raising was negative. No spasm was present. Reflexes were normal. *Dr. Kauffman noted that motor strength testing was marked by poor effort and giving-way in the upper and lower extremities. He suspected that strength should be 5/5 in the upper and lower extremities; grip testing also should be 5/5. Sensation was normal, with inconsistencies between objective and subjective findings.* Dr. Kauffman specified that sensation was intact in the upper extremities. In the lower extremities, it was also intact, but when he tested sensation in the legs, middle third and distal, the claimant reported that it felt like tingling in both legs, including the ankles and feet, both plantar and dorsal. *Dr. Kaufmann added that Waddell's rotation test for nonorganic symptoms was positive in the spine;* light pressure on the head caused pain in her low back. She also had pain to very light subcutaneous pressure in the back area, and moved away with pain and moaning and groaning. *He observed that while she had giving away of all muscle groups, including the legs and arms, there were no signs of atrophy, or any observable etiology for giving away or weakness.* Dr. Kauffman concluded that the claimant could stand, walk, or sit for six hours a day, and lift 20 pounds occasionally and 10 pounds frequently. She had no manipulative limitations, and could frequently perform postural activities such as bending and stooping, except that she could never climb ladders, ropes, or scaffolds.

AR 18-19 (emphasis added). As Plaintiff argues, the ALJ failed to mention that Dr. Kauffman also found all 18 fibromyalgia points to be positive. AR 793. Dr. Kauffman expressly noted Plaintiff's poor effort and factored this information, along with the rest of his findings, into his conclusion regarding Plaintiff's lifting limitations.

PAGE 8 – OPINION AND ORDER

The ALJ accepted both Dr. Kauffman's opinion and the identical conclusion of Dr. Basham, a reviewing, non-examining physician, regarding Plaintiff's limitations in sitting, standing, and walking. The ALJ then stated: "However, Dr. Basham also found that the claimant could lift 50 pounds occasionally and 25 pounds frequently, and this is more consistent with the claimant's performance by herself of all caregiving duties, regardless of testimony." AR 23. The ALJ followed this statement by noting, among other reasons not argued by the Commissioner, "at most, [Plaintiff] has the questionable pain behavior cited by Dr. Kauffman." AR 30. The ALJ did not provide any explanation or reasoning showing that despite detailing Plaintiff's "questionable" pain behavior, Dr. Kauffman did not account for this behavior, or otherwise factor it in to his conclusions regarding Plaintiff's lifting limitations. Among the other test results, including objective findings such as spinal imaging, Dr. Kauffman detailed his observations about Plaintiff's giving away and poor effort, and factored in all of his findings in reaching his conclusion.

The Commissioner solely relies on the fact that Dr. Kauffman noted that Plaintiff engaged in poor effort and made "moans" that were "out of proportion to what would be expected" as the only valid basis for the ALJ to discount Dr. Kauffman's opinion. The ALJ erred in discounting Dr. Kauffman's lifting limitations on that basis. *See David D. v. Saul*, 405 F. Supp. 3d 868, 883 (D. Or. 2019) (finding that when a doctor's report expressly acknowledged potential exaggeration and factored it into the opinion, the potential exaggeration is not a proper reason to discredit the doctor's opinion).

**B. Plaintiff's Subjective Symptom Testimony**

Plaintiff contends the ALJ committed legal error in discounting her subjective symptom testimony on the basis of her: (1) documented inconsistencies on Dr. Kauffman's exam; (2) activities of daily living and job duties; (3) routine treatment; (4) alcohol and drug use; and

(5) lack of "acute" diagnosis. In response, the Commissioner argued that the ALJ was correct in relying on Plaintiff's documented inconsistencies on Dr. Kauffman's exam. The Commissioner did not argue that any of the other reasons given by the ALJ were valid, and thus conceded those issues.

### 1. Legal Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. The ALJ found that Plaintiff does have an impairment that could produce the symptoms alleged.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering *specific, clear and convincing* reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

*Smolen*, 80 F.3d at 1281) (emphasis added); *see also Austin v. Saul*, 818 F. App'x 725, 728 (9th Cir. 2020) (finding that a claimant's possible exaggerations regarding the severity of his symptoms cannot be equated with affirmative evidence of malingering). It is "not sufficient for the ALJ to make only general findings; he must state *which pain testimony* is not credible and *what evidence* suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (emphasis added). Describing the evidence that suggests complaints are not credible, but not connecting that evidence to specific portions of a plaintiff's symptom testimony, is insufficient even if the relevant testimony seems obvious. *Ammie B. v. Saul*, 2020 WL 1984894, at *10 (D. Or. Apr. 27, 2020) (citing *Bray*, 554 F.3d at 1226). The reasons given for discrediting symptom testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ may not discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2017 WL 5180304, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's

PAGE 11 – OPINION AND ORDER

statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

### 2. Specificity of ALJ's Opinion

The ALJ made two statements conveying his decision regarding Plaintiff's subjective symptom testimony. Before discussing her medical record, the ALJ stated:

> The record shows that the claimant is somewhat impaired by her medical disorders, but not substantially so. *The claimant in particular is unable to establish that while being able to work part time at a physical job, she could not work full time.* Many of the claimant's alleged symptoms are related to disorders such as fibromyalgia, which are *more than usually dependent on the reliability of her reports* of the extent and nature of symptoms such as pain. However, the claimant is *not wholly reliable in this respect*[.]

AR 18 (emphasis added). After concluding his discussion of Plaintiff's medical record, the ALJ concluded that

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; to respond to however, *the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms* are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR at 25 (emphasis added).

PAGE 12 – OPINION AND ORDER

Among other testimony, Plaintiff testified about: (1) her need to take unscheduled rest breaks during the workday and the pain and exhaustion she experiences after workdays as a result of her back pain, which prevent her from working consecutive days; (2) her difficulty lifting objects and carrying out manual labor; and (3) her difficulty sitting or standing for sustained periods of time. The ALJ did not explain whether he rejected those, or any other, statements and why any particular statement's rejection supports his finding of Plaintiff's ability to maintain full time work. The ALJ must specifically discuss which testimony about what limitations he is crediting or discrediting, and why. *See, e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (determining that a general rejection of claimant's testimony was insufficient and that the ALJ committed legal error when she did not specify what testimony she rejected and why); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Dodrill*, 12 F.3d at 918 (determining that the ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Ammie B. v. Saul*, 2020 WL 1984894, at *8 (D. Or. Apr. 27, 2020) (concluding that summarizing the medical record but failing to link it to any specific testimony is legal error).

The ALJ did not identify which subjective symptom testimony was not credible. As explained above, the ALJ's most direct statement about his findings relating to Plaintiff's symptom testimony was that her testimony was not entirely consistent with the medical evidence and other evidence "for the reasons explained in this decision." AR 25. The ALJ did not specify in that statement, or elsewhere, which statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms the ALJ was discounting. Thus, the ALJ erred in his general discounting of Plaintiff's subjective testimony.

### 3. Whether the ALJ's Reason was Clear and Convincing

Plaintiff objected to a number of bases for the rejection of her symptom testimony articulated by the ALJ, and the Commissioner only defended one reason: documented inconsistencies on Dr. Kauffman's exam. Thus, that is the only reason considered in this Opinion and Order. The ALJ did not clearly state how Dr. Kauffman's documented inconsistencies affected the ALJ's decision about a specific piece of Plaintiff's subjective symptom testimony and how he drew a conclusion from that analysis. Instead, the ALJ made the broad generalizations quoted above. As discussed above, such general assertions fail to meet the standard for discrediting subjective symptom testimony.

Plaintiff argues in her reply that the Commissioner's reliance on Plaintiff's purported "poor effort" and "exaggeration" during her examination with Dr. Kauffman is misplaced because it fails to provide clear and convincing evidence sufficient to discount a claimant's testimony. Plaintiff first notes that the word "exaggeration" is nowhere in the record and that Dr. Kauffman noted only that Plaintiff showed poor effort and that she moaned more than would be expected. Plaintiff also points out that Dr. Kauffman specifically found all 18 fibromyalgia points to be positive, and fibromyalgia is a syndrome that causes heightened pain. Plaintiff argues that the record is replete with Plaintiff's complaints about ongoing issues with pain, exhaustion, and fatigue that are consistent with her testimony, and that the ALJ failed to connect poor effort or moaning in one examination with Plaintiff's testimony or the rest of the record. Plaintiff concludes that that her poor effort and moaning in one examination is not clear and convincing evidence to discount all of her subjective testimony.

The Court agrees that the ALJ has not clearly or convincingly applied his analysis of the impact of Plaintiff's behavior during Dr. Kauffman's exam to his subjective symptom evaluation. While the ALJ said Plaintiff was not "wholly reliable" he did not connect that lack of

"reliability" to a specific symptom testimony or a specific limitation. The ALJ may not make sweeping assessments of a claimant's overall character or truthfulness. SSR 16-3p, 2017 WL 5180304, at *11 (Oct 25, 2017). As it is written, this is precisely what the ALJ's opinion does. By stating that Plaintiff's general reliability is at issue, rather than analyzing the reported instances of poor effort in Dr. Kauffman's examination and how those relate to the specific symptoms alleged, the ALJ committed the type of over-arching credibility finding that SSR 16-3p prohibits, and which is precluded under Ninth Circuit precedent. *See Brown-Hunter*, 806 F.3d at 489; *Smolen*, 80 F.3d at 1284; *Dodrill*, 12 F.3d at 918. Because the ALJ failed to explain which symptoms are not credited and what evidence supports this discrediting, the ALJ committed legal error in his evaluation of Plaintiff's subjective symptom testimony.

**C. Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings.

PAGE 15 – OPINION AND ORDER

*Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Under the credit-as-true rule, erroneously discredited claimant testimony is presumed to be true

> where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true.

*Garrison*, 759 F.3d at 1019 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

As discussed above, the ALJ committed legal error in his rejection of Dr. Kauffman's lifting limit and in his rejection of all of Plaintiff's subjective symptom testimony. The ALJ asked the Vocational Expert (VE) to identify, given Plaintiff's age, education, and RFC, which past jobs she could carry out as SGA. The only past relevant work that someone of Plaintiff's age, education, experience, and with an ability to complete simple routine tasks at a medium level of exertion, was barista. AR 70-71. The ALJ next asked the VE about the availability of other jobs in the national economy that matched Plaintiff's RFC as described above. The VE identified three such jobs. AR 71. The ALJ did not ask the VE about jobs in the national economy that matched the other elements of Plaintiffs RFC, but had a light level of exertion. Because the ALJ declined to get that information from the VE, there is no evidence in the record

PAGE 16 – OPINION AND ORDER

to support the existence of jobs Plaintiff could do if her lifting capacity is designated as light and her limitations on movement, age, education, and her ability to carry out simple, routine tasks remains the same. This error, on its own, would require further fact finding regarding whether there are jobs available in the national economy for which she is qualified. The Court next, however, considers the ALJ's error relating to Plaintiff's subjective symptom testimony.

As the Ninth Circuit has explained, improperly discredited symptom testimony may not be reconsidered on remand solely to permit the ALJ to make sufficiently specific findings. Plaintiff's testimony included, among other symptoms, her need for unscheduled and frequent rest breaks during her workday. Without a wholesale disregard for Plaintiff's testimony, the Court has no reason to find that Plaintiff's poor effort or giving way in her extremities during Dr. Kauffman's exam invalidates this symptom testimony.

During the July 2018 hearing, the ALJ did not ask the VE questions about Plaintiff's work opportunities should she require unscheduled breaks during the workday. Plaintiff's attorney, however, asked the VE this question. The VE testified that two unscheduled additional ten-minute breaks would preclude all employment. AR 72-73. Upon Plaintiff's attorney's questioning, the VE also stated that a one-hour break, in addition to regularly scheduled lunch and rest breaks, would preclude employment. AR 73.

Thus, if Plaintiff's testimony regarding her rest break needs is credited as true, she would be precluded from all SGA. This finding renders moot the potential for Plaintiff to carry out SGA should Plaintiff's RFC be modified to a light exertion level. Taking this into account, and reviewing the record as a whole, it is fully developed and free from conflicts and ambiguities such that there is not a useful purpose for further proceedings. Crediting Plaintiff's improperly

rejected symptom testimony as true, the record clearly shows that Plaintiff may not carry out SGA and thus is disabled under the meaning of the Act and accordingly entitled to benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for calculation of benefits.

**IT IS SO ORDERED**.

DATED this 12th day of November, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge